UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-81078-KAM

CARLY A. KAZINETZ,

Plaintiff,

v.

UNITED STATES CITIZENSHIP AND,
IMMIGRATION SERVICES, et al.,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiff's Cross Motion for Summary Judgment (DE 27) and Defendants' Cross Motion for Summary Judgment (DE 28). The motions are fully briefed and ripe for review. The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background

Plaintiff Carly Kazinetz ("Plaintiff") is a United States citizen who brings this case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff challenges the denial of her Form I-130 Petition for Alien Relative[1] ("I-130 Petition"), filed on behalf of her spouse, Jorge Dos Santos ("Santos"), a citizen of Brazil. Defendant United States Citizenship and Immigration Services ("USCIS") denied the I-130 Petition, finding that the evidence before USCIS did not show either that Santos' prior marriage to Keyonna Gregg was bona fide or that Santos had not attempted to

---

[1] The I-130 Petition is the form used to establish a United States citizen's relationship to an alien relative wishing to immigrate to the United States. See 8 C.F.R. § 204.1(a)(1).

procure by fraud an immigration benefit through a sham marriage to Gregg.

The facts, as derived from the Certified Administrative Record ("CAR"), and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:

Santos, a citizen and national of Brazil, is the intended alien beneficiary of Plaintiff's I-130 Petition. (CAR 262, 292, 297.) Santos was admitted in the United States on or about June 16, 2001, as a non-immigrant visitor for pleasure (tourist) with authorization to remain in the United States for a temporary period not to exceed December 15, 2001. (CAR 480.) Santos remained in the United States beyond December 15, 2001, without authorization. (CAR 480.) On April 22, 2002, Santos and Danielle Fonseca ("Fonseca"), a Brazilian citizen, married in a civil ceremony officiated by a justice of the peace in Danbury, Connecticut. (CAR 180, 192.) At the time of their marriage, the address for both Santos and Fonseca was listed on their marriage license as Wooster Street, Danbury, Connecticut. (CAR 180, 192.) On March 31, 2004, Santos and Fonseca divorced in Danbury, Connecticut. (CAR 193.)

On April 28, 2004, Santos and Marissa Lauren Palumbo ("Palumbo"), a United States citizen, married in a civil ceremony officiated by a justice of the peace in Danbury, Connecticut. (CAR 189.) At the time of their marriage, the address for both Santos and Palumbo was listed on their marriage license as White Street, Danbury, Connecticut. (CAR 191.) On August 10, 2005, Santos and Palumbo divorced in Broward County, Florida. (CAR 180, 189.)

Keyona Gregg is a United States citizen who was born in Pitt, North Carolina. (CAR 186.) On July 21, 2005, Gregg joined the Armed Forces of the United States, Navy. (CAR 194.) Santos and Gregg met in 2005 in Orlando, Florida. At the time, Santos was married to Palumbo.

(CAR 94.)  On January 20, 2006, Santos and Gregg married.  (CAR 180, 468.)  Santos and Gregg's marriage took place in Norfolk, Virginia. (CAR 180, 187.)  Shortly after her marriage to Santos, Gregg had an extramarital affair which resulted in a pregnancy. (CAR 417.)  In a letter dated March 13, 2006, Gregg wrote, "I joined the U.S. Navy six months ago and obligated myself to a 4-year enlistment.  This the first year that I have any verifiable income; I . . . have no verifiable income or tax returns to report prior to enlisting [in] the U.S. Navy. I lived with my mother before joining the U.S. Navy and did not work for any long length of time for me to report a W-2 for the years 2002, 2003, and 2004." (CAR 175.)  Subsequently, Gregg also stated "my income will increase, now that I am married." (CAR 172.)

On April 25, 2006, Gregg filed an I-130 Petition for Alien Relative on Santos' behalf, seeking to confer immigration benefits upon Santos as the spouse of a U.S. citizen. (CAR 180, 319, 468, 481.)  In connection with Gregg's I-130 Petition, Santos obtained an employment authorization card. (CAR 481.)  Part C, question 21 of Gregg's I-130 Petition asks, "[i]f filing for your husband/wife, give the last address at which you lived together." (CAR 181.)  In response, Gregg wrote 2815 Best Road, Greenville Pitt, North Carolina, 11/2005-1/2006.  (CAR 181.)

On April 5, 2006, Gregg also submitted a Form G-325A, biographic information, where she listed her residence as E. Best Road, Greenville Pitt, North Carolina from 1/2001-present (April 5, 2006).  (Car 182.)  On the same form, Gregg indicated her employment as Armed Forces of the U.S. Navy from 7/2005 to April 5, 2006. (CAR 182.)  Santos' G-325A form stated he lived in North Carolina from November 2005 to January 2006 and then returned to Florida. (CAR 149-51.)  However, in 2009, Santos stated that he resided in Florida since 2004. (CAR 461.)

3

On June 1, 2006, USCIS issued a Request for Additional Evidence for Gregg's 2005 Federal Income Tax Returns and W-2. (CAR 84.)  On September 28, 2006, USCIS issued to Santos a Request for Applicant to Appear for Initial Interview at USCIS on November 27, 2006. (CAR 83.)  A November 27, 2006 Nexis database search revealed an address for Gregg located at N. Pearl Street, Rocky Mount, North Carolina, 27804. (CAR 68.)  A November 27, 2006 Nexis database search revealed a North Carolina voter registration date of September 21, 2004 for Gregg, and a last vote date of November 2, 2004. (CAR 69.)  A November 27, 2006 Nexis database search revealed an address for Santos located at 2nd Avenue, Deerfield Beach, Florida 33441-5439. (CAR 72.)   A November 27, 2006 Nexis database searched revealed an address for Santos located at White Street, Danbury, Connecticut, 06810-2618. (CAR 76.)  A November 27, 2006 Nexis database searched revealed an address for Santos located at Wooster Street, Danbury, Connecticut, 06810-7823. (CAR 79.)  A November 27, 2006 Nexis database search revealed an address for Santos located at South Street, Danbury, Connecticut, 06810-8039. (CAR 79.)   Each of these Nexis documents states it is for "informational purposes only," the records "have errors," the date is "generally not free from defect," and "the system should not be relied upon as definitely accurate." (CAR 68, 72, 74, 76, 79.)

During the August 14, 2007 interview in connection with Gregg's I-130 Petition, which was conducted by Sergio Mateo, both Santos and Gregg signed a sworn statement acknowledging that they are subject to the penalties for marriage fraud, including a fine of $250,000, imprisonment for not more than five years, or both. (CAR 89, 92, 96.)  A document with a heading "sworn statement" provides answers to various questions by Ms. Gregg including the following:

4

> Q: Did you and your husband celebrate your birthday last year?
> A: I was still in Virginia, so I just sent a card.

(CAR 91.)

> Q: When did you arrive from Virginia?
> A: It was Friday, August 10th, 2007. My flight landed at 2:00 p.m.

(CAR 91.)

> Q: Who picked you up from the airport?
> A: Carly. . . she's a friend of my husband.

(CAR 94.)

> Q: Why didn't your husband pick you up?
> A: He was working. He requested to be off from work, but after they gave him the day off, they called him at the last minute to come to work. Then he made arrangements for Carly to come and pick me up.

(CAR 94.)

> Q: When did you leave Virginia?
> A: I've been in Virginia since 2005.

(CAR 94.)

> Q: Did you and your husband celebrate your husband's birthday this year?
> A: No. I was in Virginia and couldn't get out. For this birthday, I sent him a card.

(CAR 94.)

> Q: How often do you come to Florida to see your husband?
> A: Last time I came from Virginia was in July 4, 2007.

(CAR 94.)

At that interview, Gregg withdrew her I-130 Petition. (CAR 89, 450, 482.) Gregg provided the following reason for the withdrawal: "I got married to help a friend get his greencard. I did not get no money for it." (CAR 89.) On November 24, 2007, USCIS mailed a

letter to Gregg's address of record at E. Best Road, Greenville, North Carolina, 27803, referring to Gregg's "formal withdrawal" of the I-130 Petition she had filed on Santos' behalf. The letter noted that "[p]ursant to your withdrawal, this office considers the matter closed. No further action will be taken on the petition." (CAR 45, 88.) On November 24, 2007, USCIS issued a decision to Santos denying his Form I-485 application for status as permanent resident of the United States. (CAR 87.) USCIS notified Santos that he was "without lawful immigration status" and further notified Santos that he was "present in the United States in violation of the law" and that he is "required to depart the United States." (CAR 87.) On April 29, 2008, Gregg and Santos divorced. (CAR 482.)

Plaintiff is a United States citizen. (CAR 217.) On April 29, 2009, Plaintiff and Santos married in a civil ceremony in West Palm Beach, Florida. (CAR 319, 482.) On June 19, 2009, Plaintiff filed a Form I-130 Petition seeking to confer immigration benefits upon Santos as the spouse of a U.S. citizen. (CAR 319.) At the time of the petition, Plaintiff was unemployed, had been unemployed since 2005 and had not filed any tax returns for the years 2006, 2007 and 2008. (CAR 263-71.) On June 14, 2009, Santos applied for lawful permanent resident immigrant status in the United States based on his marriage to Plaintiff. (CAR 282-85.) On August 25, 2009, Plaintiff and Santos were interviewed by USCIS. (CAR 14, 282.)

On September 9, 2009, USCIS issued a notice of intent to deny ("NOID") Plaintiff's I-130 Petition, citing 8 U.S.C. § 1154(c)[2] of the Act as the basis of the denial. (CAR 319.) In a

---

[2] 8 U.S.C. § 1154(c) provides:

(c) Limitation on orphan petitions approved for a single petitioner; prohibition against approval in cases of marriages entered into in order to evade immigration laws; restriction on future entry of aliens involved with marriage fraud

6

letter dated October 5, 2009, Plaintiff submitted additional evidence through her counsel, in response to the NOID which included:

1)     Affidavit of Gregg[3] (CAR 336).

2)     Affidavit of Gregg's sister (CAR 337).

3)     Affidavit of Gregg's mother (CAR 338).

4)     Affidavit of friend of Santos and Gregg (CAR 339-40).

5)     Affidavit of friend of Santos and Gregg (CAR 341).

6)     Affidavit of friend of Santos and Plaintiff (CAR 342).

7)     Bank Statements from Gregg and Santos' Joint Account (CAR 343-51, 364-88, 410-13).

8)     Comcast Utility Statements for Gregg and Santos (CAR 352-63).

9)     Photographs of Gregg and Santos together (CAR 390-97).

10)     Gregg and Santos' jointly filed 2006 federal income tax return (CAR 399-402).

---

Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).

[3] Gregg stated that, during her August 14, 2007 USCIS interview, someone from the Federal Bureau of Investigations threatened her with arrest, told her that the marriage was fraudulent and, if she did not withdraw the petition, he would call her Navy commander and tell him that she was involved in immigration fraud and should be discharged from the military. (CAR 336, 443.) The record contains a photocopy of her military identification with the telephone number and name of her superior officer. (CAR 90.)

11) Florida Power and Light Statements for Gregg and Santos' home (CAR 403-09).

12) Undated letters between Gregg and Santos while Gregg was in boot camp (CAR 426-29).

On November 25, 2009, USCIS denied Plaintiffs I-130 Petition. (CAR 329-31; 438-40; 461-62.) USCIS's denial stated it had considered the personal statements and documentary submissions of Gregg and Santos, as well as their conduct after the marriage. (CAR 461.) On November 25, 2009, USCIS denied Santos' Form I-485, Application to Adjust Status. (CAR 328.) On September 6, 2011, USCIS served Santos with a Notice to Appear, which initiated removal proceedings in immigration court. (CAR 475-77.) The Notice to Appear charged Santos with removability under the provisions of sections 8 U.S.C. § 1227(a)(1)(B) (overstay) and 1227(a)(1)(G)(ii) (marriage made for the purpose of procuring the alien's admission as an immigrant). (CAR 477.) On or about December 23, 2009, Plaintiff filed a motion to reopen and reconsider the decision, which was denied on March 25, 2011. (CAR 461-63.) USCIS determined the evidence submitted in support of the motion to reopen was "basically the same, aside form a couple of pictures, a copy of tax returns for 2006 in both names with address in Virginia, and more Bank of America statements in both names . . . with minimal balance." (CAR 461.) USCIS further determined that the rebuttal in response to the Notice of Intent to Deny "lacked convincing evidence" to establish Gregg and Santos' marriage was not entered into "to circumvent the immigration laws." (CAR 461.)

Defendants move for summary judgment, contending that, under the narrow review afforded by the Administrative Procedures Act ("APA"), the Court should uphold the agency's finding of marriage fraud in Santos' file. According to Defendants, this decision was not

8

arbitrary or capricious because it relied on Gregg's sworn statement which admitted her marriage to Santos was to help him get a green card, her withdrawal of the petition, their subsequent divorce, and inadequate record evidence that Gregg's marriage to Santos was bona fide.  In contrast, Plaintiff moves for summary judgment claiming that the decision by the USCIS is arbitrary because it ignores the bulk of the evidence and the decision is not based upon substantial evidence and instead is based upon unreliable evidence.

II.  Legal Standard

In examining a decision by the USCIS at the summary judgment stage, the Eleventh Circuit has explained the proper approach for the district courts to take:

> Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  The evidence must be viewed in the light most favorable to the non-moving party. However, even in the context of summary judgment, an agency action is entitled to great deference.  Under the Administrative Procedure Act, a court shall set aside an action of an administrative agency where it is arbitrary, capricious, or an abuse of discretion.  Under the arbitrary and capricious standard, we must consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.
>
> The focal point for judicial review of an administrative agency's action is the administrative record.  The reviewing court does not conduct its own investigation and substitute its own judgment for the administrative agency's decision.  Instead, the court is to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.

Sunshine Co. Food Distributor, Inc. v. U.S. Citizenship and Immigration Svcs., 362 F. App'x 1, 2-3 (11th Cir. 2010) (citations and quotation marks omitted).  The arbitrary and capricious standard of review is "exceedingly deferential." Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir. 1996).

III. Discussion

Congress has defined the process by which a United States citizen may bring an alien spouse to this country as an immigrant. 8 U.S.C. §§ 1151(b)(2)(A)(I), 1154. The Immigration and Nationality Act ("INA"), as amended, delegates the adjudication of immigrant visa petitions to USCIS to investigate the underlying circumstances of a claimed marital relationship before conferring immigration benefits. See 8 U.S.C. § 1154(b); Pub. Law No. 107-296, § 451(b) (Nov. 25, 2002). Section 1154(c) bars USCIS from conferring spousal benefits if the alien has entered into a marriage to circumvent the immigration laws. See 8 U.S.C. § 1154(c); see Velez-Duenas v. Swacina, 875 F. Supp. 2d 1372, 1377-78 (S.D. Fla. 2012) ("the statute requires USCIS to deny an I–130 visa petition filed by a United States citizen on behalf of an alien if the USCIS determines that the alien has previously entered into a fraudulent marriage in order to evade immigration laws"). USCIS makes this determination in the course of adjudicating a spousal petition. See 8 C.F.R. § 204.2(a)(1)(ii); Matter of Samsen, 15 I. & N. Dec. 28, 29 (BIA 1974). Generally, USCIS's finding that a marriage was not valid must be based on an independent review of the record evidence. Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990). That stated, the burden of proof is on the petitioner to establish eligibility for the benefit sought. 8 U.S.C. § 1361; Velez-Duenas, 875 F. Supp. 2d at 1378; Matter of Brantigan, 11 I. & N. Dec. 493, 493 (BIA 1966).

The Court finds that the USCIS's finding of marriage fraud between Santos and Gregg was not arbitrary nor capricious. The finding was based on the following factors: (1) Santos and Gregg's lack of joint residence and cohabitation; (2) lack of asset commingling; (3) lack of a shared life together; (4) Gregg's extramarital affair occurring shortly after her marriage which

resulted in a pregnancy; (5) Gregg's admission that she entered into the marriage "to help a friend get his greencard;" (6) Gregg's failure to appeal the marriage fraud finding and (7) Santos and Gregg's divorce eight months after Gregg withdrew the I-130 Petition.

The record before USCIS did not contain adequate documentation that Santos and Gregg entered into a bona fide marriage. A public record search by USCIS revealed that the parties maintained separate residences. Moreover, on April 5, 2006, Gregg submitted a form which listed her residence as E. Best Road, Greenville Pitt, North Carolina from January 2001 through April 5, 2006 whereas Santos stated he resided in Florida since 2004. (CAR 182, 461.) Matter of Phillis, 15 I. & N. Dec. 385, 387 (BIA 1975) ("[w]here the parties have never lived together, the amount of evidence required to establish that the marriage was not entered into for the fraudulent purpose of evading the immigration laws may be considerable"). Furthermore, there was record evidence that Santos and Gregg spent birthdays apart and did not visit or see each other often. Their shared bank accounts had minimal balances. Significantly, it was undisputed that Gregg had an extramarital affair, soon after her marriage to Santos, which resulted in a child. See Matter of Phillis, 15 I. & N. at 387 ("[t]he conduct of the parties after marriage is relevant to their intent at the time of marriage"). Moreover, during the interview by USCIS, Gregg admitted that she "got married to help a friend get his greencard." In fact, after their interview by the USCIS, Gregg withdrew the I-130 petition and the parties divorced within eight months, thus suggesting that they abandoned the marriage once they withdrew the I-130 petition.

With respect to the affidavits submitted by Gregg's relatives and Santos' friends and the letters between Santos and Gregg, the USCIS did not err in giving this evidence less weight. The affidavits are conclusory and fail to provide details that could be verified to indicate a shared life

11

together.  Notably, the letters between Santos and Gregg are undated.

Plaintiff, however, takes issue with the evidence relied upon by USCIS.  Plaintiff posits that Gregg's statement that she married Santos to help him get a greencard was made under duress and that she later recanted this statement.  The USCIS considered the recanted statement, but found no evidence of coercion. (CAR 330.)  See FCC v. Schreiber, 381 U.S. 279, 296 (1965) (there is a presumption that administrative agencies run properly and according to the law).  The Court, when reviewing the decision of the USCIS, cannot re-weigh the evidence to reach a different result.  See United Steel, Paper and Forestry v. PBGC, 707 F.3d 319, 325 (D.C. Cir. 2013) ("in judicial review of agency action, weighing the evidence is not the court's function").  Furthermore, as discussed above, there was independent evidence in the record to support the decision by the USCIS.

Next, Plaintiff complains that the answers by Gregg during the marriage interview are unreliable and states that the record does not indicate who prepared the document, when it was prepared and that it is unsigned and not sworn.  However, USCIS points to several documents in the record that indicates that the Sergio Mateo prepared the statement (CAS 89, 92), that the interview occurred on August 14, 2007 (CAS 96) and that Santos and Gregg signed a document stating they understood the penalties of a false statement (CAS 92.)   Notably, Gregg did not seek to challenge the reliability of this sworn statement until several years after the interview.  Furthermore, there is no dispute that Gregg signed the document withdrawing her petition. (CAR 89.)

Plaintiff also challenges the use of Nexis searches by arguing that the results of the searches are unreliable.  These documents, however, are part of administrative record and

corroborate the statements made during the interview that Santos and Gregg were not living together. Even though Gregg was serving in the Navy, that does not explain the disparities in Santos' statements regarding where he was living.[4] Nor does it explain why Santos did not move to be closer to Gregg after the marriage but returned instead to Florida.

Based on the foregoing, the Court concludes that the record supports USCIS's conclusion to deny the I-130 petition and summary judgment should be granted in favor of Defendants and against Plaintiff.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff's Cross Motion for Summary Judgment (DE 27) is **DENIED.**

2) Defendants' Cross Motion for Summary Judgment (DE 28) is **GRANTED.**

3) The Court will separately issue Judgment for Defendant.

4) The Clerk shall close the case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 13th day of June, 2014.

KENNETH A. MARRA
United States District Judge

---

[4] In one form, Santos states he lived in North Carolina from November 2005 to January 2006 and then returned to Florida (CAR 149-51), but later stated he resided in Florida since 2004. (CAR 461.)